**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA⁣                  )
⁣                                           )
⁣           Plaintiiff,                     )
⁣                                           )
⁣      v.                                   )
⁣                                           )      Civil Action No. 2:07-0299
MASSEY ENERGY COMPANY, et al.,              )      Hon. John T. Copenhaver, Jr.
⁣                                           )
⁣           Defendants.                     )      CONSENT DECREEE
⁣                                           )
⁣_____  )

TABLE OF CONTENTS

I. BACKGROUND..................................................................................-1-

II. JURISDICTION AND VENUE.............................................................-2-

III. APPLICABILITY................................................................................-2-

IV. DEFINITIONS...................................................................................-3-

V. CIVIL PENALTY................................................................................-7-

VI. COMPLIANCE REQUIREMENTS .....................................................-8-

VII. INJUNCTIVE RELIEF .....................................................................-12-

VIII. ADDITIONAL INJUNCTIVE RELIEF................................................-20-

IX. REPORTING REQUIREMENTS ......................................................-21-

X. STIPULATED PENALTIES ..............................................................-27-

XI. FORCE MAJEURE..........................................................................-31-

XII. DISPUTE RESOLUTION.................................................................-34-

XIII. INFORMATION COLLECTION AND RETENTION ...........................-37-

XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS...............-39-

XV. COSTS...........................................................................................-41-

XVI. NOTICES .......................................................................................-41-

XVII. EFFECTIVE DATE .........................................................................-43-

XVIII. RETENTION OF JURISDICTION ....................................................-43-

XIX. MODIFICATION..............................................................................-43-

XX. TERMINATION...............................................................................-44-

i

XXI. PUBLIC PARTICIPATION .................................................................................... -45-

XXII. SIGNATORIES/SERVICE ................................................................................... -45-

XXIII. INTEGRATION .................................................................................................. -46-

XXIV. FINAL JUDGMENT ........................................................................................... -46-

XXV. APPENDICES ..................................................................................................... -46-

## I.   BACKGROUND

1.     Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this action on May 10, 2007 alleging that Defendants, Massey Energy Company, et al.,[1] violated Sections 301 and 402 of the Federal Water Pollution Control Act as amended by the Clean Water Act of 1977 and the Water Quality Act of 1987 ("CWA" or the "Act"), 33 U.S.C. §§ 1311 and 1342.

2.     The Complaint against Defendants alleges that Defendants discharged and continue to discharge pollutants into waters of the United States in violation of Section 301 of the Act, 33 U.S.C. § 1311, and of the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued to Defendants by the State of West Virginia and the Commonwealth of Kentucky (the "States") pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

3.     Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

4.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and shall avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

---

[1] Massey Energy Company, A.T. Massey Coal Company, Massey Coal Services, Inc., Alex Energy, Inc., Aracoma Coal Company, Inc., Bandmill Coal Corporation, Big Bear Mining Company, Clear Fork Coal Company, Delbarton Mining Company, Duchess Coal Company, Elk Run Coal Company, Inc., Green Valley Coal Company, Independence Coal Company, Inc., Jacks Branch Coal Company, Long Fork Coal Company, Majestic Mining, Inc., Marfork Coal Company, Inc., Martin County Coal Corporation, New Ridge Mining Company, Omar Mining Company, Peerless Eagle Coal Co., Performance Coal Company, Power Mountain Coal Company, Rawl Sales & Processing, Co., Road Fork Development Company, Inc., Sidney Coal Company, Inc., Stirrat Coal Company, Trace Creek Coal Company.

1

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section II, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

5.  This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b) and over the Parties.

6.  Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because it is the judicial district in which Defendants are located, reside, and/or are doing business, and/or in which the violations alleged in the Complaint occurred. Venue in this District is also proper under 28 U.S.C. § 1367(a). For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree.

7.  For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342.

## III.  APPLICABILITY

8.  The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants or other entities or persons otherwise bound by law.

2

Defendants shall not effectuate any transfer of ownership or operation of any Facility in order to alleviate responsibility under the terms of this Consent Decree.

9.     The terms, conditions, and obligations of this Consent Decree shall survive the reorganization of Defendants' corporate structure and shall be fully binding upon any entity or organization which is a successor in interest to the assets or shares of Defendants or which is associated or affiliated with Defendants, provided, however, that this Consent Decree is not intended to restrict the lawful and legitimate sale of assets to a bona fide purchaser and would not bind such an asset purchaser.

10.     Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

11.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

IV. DEFINITIONS

12.     Terms used in this Consent Decree that are defined in the Clean Water Act ("Act") or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.

3

Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Active sites" shall mean Facilities with on-going mining operations or reclamation;

b.     "Assistant Environmental Compliance Manager" shall mean the person responsible at the designated Resource Group for assisting the Environmental Compliance Manager with environmental compliance pursuant to the Revised EAM and terms of this Consent Decree;

c.     "Complaint" shall mean the complaint filed by the United States in this action on May 10, 2007;

d.     "Consecutive violation" shall mean two or more DMR results in a row from the same outlet for a given NPDES parameter that exceed a maximum daily limit or two or more DMR results in a row from the same outlet for a given NPDES parameter that exceed a monthly average effluent limit for a given NPDES parameter;

e.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXV);

f.     "Daily Maximum Violation" shall mean an exceedance of a maximum daily limit;

g.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day

4

would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

h.      "Defendants" shall mean the persons or entities named in the Complaint;

i.      "Environmental Assurance Manual" or "EAM" shall mean Defendants' Environmental Assurance Manual enacted in 2002 and revised pursuant to a 2003 agreement with EPA's Office of Suspension and Debarrment;

j.      "Environmental Compliance Manager" shall mean the person responsible at the designated Resource Group for environmental compliance pursuant to the Revised EAM and terms of this Consent Decree;

k.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

l.      "Effective Date" shall have the definition provided in Section XVII;

m.      "Facility" or "Facilities" shall mean Defendants' mining operations, including but not limited to, surface and underground mines, coal processing and preparation plants, coal transportation facilities, and all associated operations;

n.      "Inactive sites" shall mean Facilities that have disturbed areas with no on-going mining operations or reclamation;

5

o.     "Maximum daily limit" shall mean maximum daily discharge limitation as defined in 40 C.F.R. § 122.2 and minimum daily discharge limitation for pH or maximum daily discharge limitation for pH;

p.     "Monthly average effluent limit" shall mean average monthly discharge limitation as defined in 40 C.F.R. § 122.2;

q.     "Monthly Violation" shall mean an exceedance of a monthly average effluent limit;

r.     "NOVs" shall mean notices of violation under the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code § 22-3-17 (2004) and notices of noncompliance under the Kentucky Surface Mining Act, KY Rev. Stat. Ann. § 350.130 (Michie 2004);

s.     "NPDES" shall mean the National Pollutant Discharge Elimination System as defined in 40 C.F.R. § 122.2 and any state-issued NPDES permits, including West Virginia NPDES permits and Kentucky KPDES permits;

t.     "Outlet" shall mean an NPDES permitted discharge point where monitoring and sampling is conducted pursuant to an NPDES permit;

u.     "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

v.     "Parties" shall mean the United States and Defendants;

6

w.          "Persistent noncompliance issues" shall mean three or more violations of a given NPDES parameter at an outlet within one calendar year (i.e., January 1 through December 31);

x.          "Reclaimed sites" shall mean Facilities that have been regraded to "Phase I" bond release standards under the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*;

y.          "Resource Group" shall mean any of Defendants' processing and shipping centers;

z.          "Revised EAM" shall mean Defendants' Environmental Assurance Manual as amended pursuant to this Consent Decree;

aa.          "Section" shall mean a portion of this Decree identified by a Roman numeral;

bb.          "States" shall mean the State of West Virginia and the Commonwealth of Kentucky; and

cc.          "United States" shall mean the United States of America, acting on behalf of EPA.

## V. CIVIL PENALTY

13.          Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $20,000,000 as a civil penalty.

14.          Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions

to be provided to Defendants, following entry of this Consent Decree, by the Financial Litigation

Unit of the U.S. Attorney's Office for the Southern District of West Virginia, US Courthouse,

300 Virginia St. SE, Charlestown WV 25301, 304-345-2200. At the time of payment,

<small>Charleston</small>

Defendants shall send a copy of the EFT authorization form and the EFT transaction record,

together with a transmittal letter, which shall state that the payment is for the civil penalty owed

pursuant to this Consent Decree in *United States v. Massey Energy Company, et. al.*, and shall

reference the civil action number, 2:07-0299, and DOJ case number, 90-5-1-1-08470, to the

United States in accordance with Section XVI of this Decree (Notices); by email to

acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

15. Defendants shall not deduct any penalties paid under this Decree

pursuant to this Section or Section X (Stipulated Penalties) in calculating its federal income tax.

### VI. COMPLIANCE REQUIREMENTS

16. This Consent Decree in no way affects or relieves Defendants of

their responsibility to comply with applicable federal, state, and local laws, regulations, and

permits. Defendants shall incorporate the requirements in Section VII of this Consent Decree

into Defendants' Environmental Assurance Manual ("EAM") and the requirements will be

enforceable by EPA as specified in this Consent Decree. Notwithstanding Defendants'

incorporation of the requirements in Section VII of this Consent Decree into its EAM, EPA shall

maintain the authority to enforce the terms of this Consent Decree, including: (a) the obligation

8

to amend the EAM; (b) the obligation to implement and maintain for the duration of this Consent

Decree the Revised EAM; (c) the Injunctive Relief in accordance with Section VII; (d) the

obligation to implement an Electronic DMR Tracking System pursuant to Paragraphs 24-26; (e)

the obligation to implement a response plan to address any noncompliant discharges pursuant to

Paragraph 27; (f) the obligation to create and maintain a database of outlets with persistent

noncompliance issues and the actions taken to address the noncompliance pursuant to Paragraph

28; (g) the obligation to perform internal audits pursuant to Paragraphs 29 and 30, hire third-party

consultants to conduct external audits pursuant to Paragraph 31, and implement appropriate

responses to the internal and external auditors' findings pursuant to Paragraphs 29-31; (h) the

obligation to appoint and maintain individuals to effectively manage environmental compliance

at each Facility pursuant to Paragraph 32; (i) the obligation to provide training pursuant to

Paragraph 33; (j) the obligation to perform WET testing pursuant to Paragraph 37; (k) the

obligation to complete and maintain the slurry line enhancement requirements set forth in

Paragraph 38; (l) the Additional Injunctive Relief pursuant to Section VIII; (m) the obligation to

implement stream remediation projects pursuant to Paragraph 39; (n) the obligation to execute

conservation easements pursuant to Paragraph 40; (o) the Reporting Requirements set forth in

Section IX; (p) the obligation to hire a qualified Independent Monitoring Contractor to monitor

and report on Defendants' compliance with the terms of this Consent Decree as required under

Section IX; (q) the obligation to make available to EPA and the Independent Monitoring

Contractor the information to be created, maintained, and/or produced under this Consent

Decree; (r) the obligation to pay the civil penalty of $20,000,000 set forth in Section V; and (s)

9

the obligation to pay stipulated penalties as specified in Section X.   Defendants shall perform the

work required by this Consent Decree in compliance with the requirements of all applicable

federal, state, and local laws, regulations, and permits.  This Consent Decree should not be

considered as a permit issued pursuant to any federal, state, or local statute or regulation.

          17.        <u>Approval of Deliverables</u>.  After review of any plan, report, or

other item, including the Revised EAM and any required audits, that is required to be submitted

pursuant to this Consent Decree, EPA shall in writing:  (a) approve the submission; (b) approve

the submission upon specified conditions; (c) approve part of the submission and disapprove the

remainder; or (d) disapprove the submission.

          18.        If the submission is approved pursuant to Paragraph 17(a),

Defendants shall take all actions required by the plan, report, or other document, in accordance

with the schedules and requirements of the plan, report, or other document, as approved.  If the

submission is conditionally approved or approved only in part, pursuant to Paragraph 17(b) or

17(c), Defendants shall, upon written direction from EPA, take all actions required by the

approved plan, report, or other item that EPA determines are technically severable from any

disapproved portions, subject to Defendants' right to dispute only the specified conditions or the

disapproved portions, under Section XII of this Decree (Dispute Resolution).

          19.        If the submission is disapproved in whole or in part pursuant to

Paragraph 17(c) or 17(d), Defendants shall, within 45 Days of receipt of disapproval or such

other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report,

or other item, or disapproved portion thereof, for approval, in accordance with the preceding

Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

20.          Any stipulated penalties applicable to the original submission, as provided in Section X of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is materially disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

21.          If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendants' right to invoke Dispute Resolution under Section XII and the right of EPA to seek stipulated penalties as provided in the preceding Paragraph.

22.          <u>Permits</u>. Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and substantially complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section XI of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and substantially

11

complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VII. INJUNCTIVE RELIEF

23. <u>Revise Environmental Assurance Manual</u>. Within 30 Days of entry of this Consent Decree, Defendants agree to amend the Environmental Assurance Manual ("EAM") pursuant to the requirements of this Consent Decree and submit to EPA for approval as set forth in Paragraphs 17-21. The amendments to the EAM shall include: (1) a protocol for tracking, assessing, and managing DMR results; (2) a system for Internal Environmental Audits of Facilities, Internal Audits of Treatment Facilities, and Third-Party Environmental Audits; and (3) a framework and set of requirements for environmental organizational management, management notification of environmental violations, and environmental training improvements.

24. <u>Electronic DMR Tracking System</u>: Within 90 Days of entry of this Consent Decree, Defendants shall implement an electronic Discharge Monitoring Report ("DMR") tracking system which shall provide for notification within 48 hours of DMR effluent sampling results to the Environmental Compliance Manager responsible at the related Facility and to appropriate management at Massey Energy Company and Massey Coal Services. Such tracking system shall include a computerized network that provides for laboratory results to be transmitted, stored, and maintained.

25. <u>Electronic DMR Tracking System Results</u>. The Electronic DMR Tracking System Results shall include all pollutants that are regulated under effluent limits contained in Defendants' NPDES permits, including but not limited to effluent limits for total

12

suspended solids, settleable solids, pH, iron, manganese, and aluminum. The Electronic DMR Tracking System Results shall indicate where laboratory results show a violation of applicable NPDES permit effluent limits, identifying the outlet and date when the violation occurred.

26. <u>Electronic DMR Tracking System Results Recipients.</u> Defendants shall send the Electronic DMR Tracking System Results to the responsible Environmental Compliance Manager at the related Facility and to appropriate management at Massey Energy Company and Massey Coal Services pursuant to Paragraph 24. Where effluent limits are exceeded, Defendants shall provide on a weekly basis the following information to the appropriate state inspector at a designated state regulatory agency: (a) permit number; (b) outlet identification; (c) pollutant parameter; and (d) sample result.

27. <u>Response To Noncompliant Discharges.</u> Upon completion of the Electronic DMR Tracking System set forth in Paragraph 24 (i.e. within 90 Days of entry of this Consent Decree), Defendants shall implement a response plan for noncompliant discharges (as reported by the Electronic DMR Tracking System), which shall provide for investigation of effluent limit violations and implementation of actions necessary to achieve compliance with the applicable NPDES permit limits. This response plan shall, at a minimum, provide for response actions as follows:

a. First Violation Response. Upon the first violation of a maximum daily limit or a monthly average effluent limit at any outlet, Defendants shall promptly prepare a report describing the violation, the cause of the violation, and the planned response to the violation. This report shall be distributed to the Environmental Compliance Manager responsible

13

at the related Facility and to appropriate management at Massey Energy Company and Massey

Coal Services pursuant to procedures described in the Revised EAM. After a first violation of a

maximum daily limit or monthly average effluent limit at any outlet, Defendants shall increase

monitoring and sampling efforts as appropriate.

   b. Second Violation Response. Upon the second consecutive

violation of a maximum daily limit or upon the second consecutive violation of a monthly

average effluent limit at any outlet, Defendants shall, in addition to the requirements in Paragraph

27(a), begin daily monitoring and sampling of discharges until the outlet returns to compliance

(i.e. one compliant DMR sampling result after a consecutive violation of a maximum daily limit

or one month of compliant DMR sampling results after a consecutive violation of a monthly

average effluent limit) or Defendants shall hire an outside consultant and comply with the terms

of Paragraph 27(d) of this Consent Decree.

   .c. Third Violation Response. Upon the third consecutive violation of

a maximum daily limit or upon the third consecutive violation of a monthly average effluent limit

at any outlet, Defendants shall, in addition to the requirements in Paragraphs 27(a) and 27(b),

consult with an individual with substantial expertise in sediment control technologies and Clean

Water Act compliance and implement measures recommended by that individual.

   d. Subsequent Violation Response. Upon four or more consecutive

violations of a maximum daily limit or upon four or more consecutive violations of a monthly

average effluent limit at any outlet, Defendants shall hire a third-party consultant to examine the

problem. Defendants shall continue daily monitoring and sampling of discharges unless the

consultant determines that daily monitoring and sampling will not resolve the noncompliance.
The consultant shall prepare a report detailing: (1) the cause of the continuing violations; (2) the
appropriate level of monitoring and sampling; and (3) a plan to address the continuing
noncompliant discharges. Defendants shall implement the proposed plan according to the
consultant's recommendations within 30 Days of receipt of the report. The consultant's report
and any documentation of actions taken shall be submitted to EPA in the quarterly report
required by Paragraph 43 and to appropriate management at Massey Energy Company and
Massey Coal Services.

       28.          <u>DMR Database</u>. Within 60 Days of entry of this Consent Decree,
Defendants shall create and maintain a DMR Database identifying outlets with persistent
noncompliance issues. The DMR Database shall describe what actions were taken or need to be
taken to remedy the noncompliance. Outlets with Persistent noncompliance issues after entry of
this Consent Decree shall be added to the DMR Database. Outlets listed in the DMR Database
that do not experience noncompliant discharges for the given NPDES parameter 12 months from
the last violation may be removed from the list. Outlets with five or more violations of the same
pollutant parameter within one calendar year shall at a minimum be addressed by Defendants in
accordance with the response procedures in Paragraph 27(c).

       29.          <u>Internal Environmental Audits of Facilities.</u> Defendants shall
conduct internal environmental audits of all Facilities as follows:

          a.          upon approval of the Revised EAM, audits under this Paragraph
shall be conducted at active sites on a monthly basis, at inactive sites on a quarterly basis, and at

reclaimed sites on an annual basis, at a minimum, in accordance with procedures established in the Revised EAM. The audits shall include, but not be limited to, an evaluation of compliance in the following areas: (i) Trash and Scrap Metal; (ii) Drainage and Sediment Control; (iii) Oil and Fuel Handling; (iv) Roads; (v) Septic Systems; and (vi) Batteries;

> b. audits under this Paragraph shall be reviewed during monthly meetings for each Resource Group; and

> c. audits under this Paragraph shall be entered into an electronic database within 48 hours of completion. The electronic database shall include a description of every noncompliance and a date for correction. Noncompliances that are not corrected by the date designated for correction shall be reported to appropriate management at Massey Energy Company and Massey Coal Services.

30. <u>Internal Audits of Treatment Systems</u>. Defendants shall conduct internal audits of treatment systems at the time of each DMR sampling. Audits pursuant to this Paragraph shall record the date and time of the audit and determine whether: (a) the outlet is accessible; (b) storage capacity is adequate; (c) the outlet is unobstructed; (d) required baffles and retention curtains are in place; (e) required chemical treatment systems function properly; (f) adequate supplies of required chemical treatment are available; (g) required lock boxes are in place on chemical treatment valves; and (h) discharge markers are visible at outlets. Audits pursuant to this Paragraph shall be submitted to the Environmental Compliance Manager responsible at the related Facility, and Defendants shall respond as appropriate to issues of noncompliance identified in the audit within 48 hours of notification. Defendants shall maintain

16

all audits and record the date that remedial measures are taken for audits identifying any deficiencies.

      31.            <u>Third-Party Environmental Audits</u>.  Defendants shall conduct third-party environmental audits annually.  Audits under this Paragraph shall evaluate compliance with the following statutes:  Clean Air Act, Clean Water Act, Comprehensive Environmental Response, Compensation and Liability Act, Emergency Planning and Community Right to Know Act, Resource Conservation and Recovery Act, Toxic Substances Control Act, and environmental provisions of the Surface Mining, Control and Reclamation Act.  Defendants shall be required to prepare reports annually detailing the responses taken or responses planned for each finding of noncompliance in the audits and shall submit reports in accordance with Section IX (Reporting Requirements).

      32.            <u>Responsible Persons</u>.  Within 30 Days after entry of this Consent Decree, Defendants shall appoint and maintain a full-time Environmental Compliance Manager and Assistant Environmental Compliance Manager for each Resource Group.  The Environmental Compliance Manager of each Resource Group shall:  (a) determine and implement ways to efficiently and effectively manage the programs described in the Revised EAM; (b) promptly prepare and submit to appropriate management at Massey Energy Company and Massey Coal Services reports detailing all NOVs and DMR violations and any corrective actions taken; and (c) provide quarterly certification to appropriate management at Massey Energy Company and Massey Coal Services of compliance with the Revised EAM for the

17

Resource Group. The Assistant Environmental Compliance Manager shall assist in the performance of these duties.

33. Training. Defendants shall provide and require annual formal training for all individuals with environmental management responsibilities including, but not limited to: (a) Clean Water Act compliance, including sediment control technologies; (b) hazardous waste management compliance; (c) requirements in the Revised EAM; and (d) obligations in this Consent Decree. Defendants shall provide and require appropriate annual training for any individuals responsible for implementing environmental response measures. Defendants shall amend the EAM in accordance with Paragraph 23 to provide for such annual training.

34. Contracts Protocol. Within 30 Days of entry of this Consent Decree, Defendants shall refine protocols for any contractors with responsibility for monitoring, sampling, or treatment to comply with the Revised EAM and terms of this Consent Decree.

35. Organization of Environmental Responsibility. Within 30 Days of entry of this Consent Decree, Defendants shall prepare and maintain a report describing which NPDES and Surface Mining Control and Reclamation Act permits each Resource Group and Facility is responsible for managing and define the Resource Groups' environmental responsibilities. This report shall be updated once a year and a copy shall be sent to EPA annually pursuant to the requirements in Section IX (Reporting Requirements).

36. Adequate Equipment. Within 30 Days of entry of this Consent Decree, Defendants shall ensure that there is adequate equipment and materials on location at

each Resource Group to maintain environmental compliance at each Facility, perform routine maintenance work, clean-up ponds, and conduct remedial work in response to spills.

37.     Water Quality Testing. Until the Termination of this Decree pursuant to Section XX, Defendants shall conduct Whole Effluent Toxicity ("WET") testing downstream of ten different outlets per year selected from the outlets listed on the DMR Database established pursuant to Paragraph 28. Such testing shall be conducted on a semi-annual basis each year to capture variations in flow pursuant to EPA Test Method Number 1002. Defendants shall have samples processed by a NELAC certified laboratory. Within 30 Days of entry of this Decree, Defendants shall submit a list of ten testing sites for approval in accordance with Paragraphs 17-21 of this Decree. Within 30 Days of the end of a calendar year (i.e. December 31), Defendants shall submit a list of ten testing sites for approval in accordance with Paragraphs 17-21 for WET testing in the upcoming year. Once each year, Defendants will perform a Rapid Bioassessment Protocol at each test site at the same time samples are collected for WET testing. All test results shall be sent to EPA annually pursuant to Section IX (Reporting Requirements).

38.     Slurry Line Enhancements. Defendants shall conduct semi-annual tests until Termination of this Consent Decree to determine the structural integrity of all slurry pipes. These tests shall be conducted under the supervision of a registered professional engineer and slurry pipes shall be repaired or replaced expeditiously in accordance with the engineer's findings. Defendants agree to install and maintain slurry line monitoring systems at each

19

preparation plant. Defendants shall develop best practices for installation of slurry lines, including procedures related to secondary containment for slurry lines.

## VIII.    ADDITIONAL INJUNCTIVE RELIEF

39.        Defendants shall implement 20 stream remediation projects on the Little Coal River, in accordance with the "Stream Restoration Plan for a 25-Mile Section of the Little Coal River," dated August 31, 2006, attached in Appendix A of this Consent Decree. Within 30 Days of entry of this Consent Decree, Defendants shall submit to EPA pursuant to Paragraphs 17-21 a plan and schedule for completion of the projects. All 20 stream remediation projects implemented pursuant to this Paragraph shall be completed within two years of entry of this Consent Decree.

40.        Within 90 Days of entry of this Consent Decree, Defendants shall execute conservation easements for 200 acres of land along stream segments as identified in the map attached in Appendix B. The conservation easements shall ensure that the 200 acres are preserved in perpetuity in a natural condition and prevent any use of the acreage that will significantly impair or interfere with actual and potential fish, wildlife, and other natural resource values as well as scenic, open space, cultural and aesthetic values.

41.        Defendants are responsible for the satisfactory completion of the Additional Injunctive Relief under this Section in accordance with the requirements of this Decree. Defendants may use contractors or consultants in planning and implementing the Additional Injunctive Relief.

20

42.        For all requirements under this Section, Defendants certify the truth and accuracy of each of the following:

a.        that, as of the date of executing this Decree, Defendants are not required to perform or develop any portion of this Additional Injunctive Relief by any federal, state, or local law or regulation and are not required to perform or develop this Additional Injunctive Relief by agreement, grant, or as injunctive relief awarded in any other action in any forum;

b.        that Defendants were not planning or intending to perform this Additional Injunctive Relief other than in settlement of the claims resolved in this Decree; and

c.        that Defendants have not received and shall not receive credit for any portion of this Additional Injunctive Relief in any other enforcement action.

## IX.  REPORTING REQUIREMENTS

43.        Defendants shall submit quarterly reports within 30 Days after the end of each quarter (i.e., by April 30, July 30, October 30, and January 30) after the Effective Date of this Consent Decree, until Termination of this Decree pursuant to Section XX. Each written quarterly report for the preceding quarter shall include:

a.        the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, including implemented or proposed solutions; and the status of any NPDES permit applications sought to effectuate this Consent Decree;

21

b.     any exceedances of NPDES permit limits or any unauthorized discharges, including DMRs and NOVs; and

c.     a description of any noncompliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation. If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify the United States of such violation and its likely duration, in writing, within 10 Days of the Day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section XI of this Consent Decree (Force Majeure).

44.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendants' performance under this Decree, or the performance of its Facilities, may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

22

45.    All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices).

46.    Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

47.    The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

48.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

49.    Independent Monitoring Contractor.  In accordance with the procedure in Paragraph 50, Defendants shall hire an Independent Monitoring Contractor ("IMC") to perform the duties in Paragraph 51. Defendants' contract with the IMC shall require the IMC

23

to perform all of the duties in Paragraph 51, to provide annual reports to EPA pursuant to

Paragraph 53 based on all information available to the IMC, and to be fully available to consult

with EPA upon EPA's request within a reasonable time and upon reasonable notice.  Defendants

shall bear all costs associated with the IMC, cooperate fully with the IMC, and provide the IMC

with access upon reasonable notice and with consideration of operational impacts to all records,

employees, contractors, and Facilities that the IMC deems reasonably necessary to effectively

perform the duties described in Paragraph 51.  Other than expressly specified in this Consent

Decree, neither Defendants nor the IMC shall be expected or required to generate any data or

prepare any report not otherwise required by law or the express terms of this Consent Decree.

   50.   <u>IMC Hiring Process.</u>  Within 30 Days of the Effective Date of this

Consent Decree, Defendants shall submit to EPA a list of two or more proposed consultants to

serve as the IMC along with their qualifications and descriptions of any previous work or

contracts with Defendants.  Each proposed consultant must employ one or more registered

professional engineers with substantial expertise and experience in the following:

   a.  coal-mining operations;

   b.  environmental and technical areas of coal-mining operations;

   c.  pollution control technologies; and

   d.  compliance with the Clean Water Act and other federal, state, and

local environmental laws or regulations.

The proposed consultants shall not be present employees or contractors of Defendants, or present

employees of any contractor of the Defendants.  Within 30 Days of receiving the list of proposed

24

consultants, EPA shall approve or disapprove each member of the list, which approval shall not

be unreasonably withheld.  Within 30 Days after receipt of EPA's approval, Defendants shall

select one contractor from those contractors approved by EPA and shall enter into the contract

described in Paragraphs 49 and 51.  In the event the contractor(s) approved by EPA are no longer

available or willing to accept the work described in Paragraph 51 when notified of their selection

by Defendants, then Defendants shall select another contractor approved by EPA and enter into

the contract described in Paragraphs 49 and 51 within 30 Days.  If EPA disapproves of all of the

proposed consultants on Defendants' list, then Defendants shall submit another list of proposed

contractors to EPA within 30 Days of receipt of EPA's written notice disapproving of the

contractors on the previous list.  If after Defendants have submitted a third list of contractors,

which must be submitted within 30 Days of receipt of written notice disapproving of all of the

contractors on Defendants' second list, the parties are unable to agree on an IMC, the parties

agree to resolve the selection of the IMC through the Dispute Resolution process in Section XII.

   51.   <u>Duties of the IMC</u>. Defendants' contract with the IMC shall

provide that the IMC shall perform the following duties:

     a.  review Defendants' Revised EAM to ensure that Defendants have

made and maintained the amendments required by this Consent Decree;

     b.  submit annual reports to EPA to assess whether Defendants have

complied with the terms of this Consent Decree; and .

     c.  make available to EPA, at its request, any documentation provided

by Defendants.

25

52.    <u>IMC Replacement Procedure</u>.  If the IMC becomes unable or unwilling to perform or complete the duties described in Paragraph 51, or for other good cause, Defendants and EPA shall confer in good faith in selecting a replacement IMC.  Defendants and EPA shall select the replacement IMC in accordance with the selection procedures in Paragraph 50 of this Consent Decree.  If Defendants and EPA do not agree on the selection of a replacement IMC, either Defendants or EPA may invoke the Dispute Resolution procedures in Section XII of this Consent Decree.  Replacement of the IMC may constitute a Force Majeure event pursuant to Section XI of this Consent Decree.

53.    <u>Annual Reports</u>.  Once Defendants have retained the IMC pursuant to Paragraph 50 of the Decree, the IMC shall provide certified annual reports to EPA in accordance with the requirements of Section IX (Reporting Requirements).  The first annual report shall be due within 30 Days of the close of the calendar year after EPA has approved the IMC pursuant to Paragraph 50 of the Decree with subsequent reports due within 30 Days of the close of each calendar year thereafter.  Each annual report shall include:

a.    any failure to meet the requirements of the Decree that occurred or remained unresolved at any time during the reporting period, the reasons for any such failure to comply, and all actions taken or planned to correct failures to comply with this Consent Decree during the reporting period, including any known delays or other problems that may affect compliance with this Decree; and

26

b.      the amount of stipulated penalties and interest, if any, accrued as of the last Day of the reporting period as a result of noncompliance with this Consent Decree, including:

i.      a description of each violation and the date noncompliance began and ended, if applicable;

ii.     a summary of the calculation of the amount of the stipulated penalty for each violation as of the last Day of the reporting period; and

iii.    a description of each violation for which Defendants have submitted to EPA an unresolved Force Majeure claim or intend to submit a Force Majeure claim pursuant to Section XI of this Consent Decree.

54.     Neither Defendants nor the United States shall be bound by the statements, conclusions or opinions of the Independent Monitoring Contractor.  However, if Defendants violate any requirement of this Consent Decree, Defendants shall be liable for stipulated penalties to the United States, unless excused by Force Majeure, pursuant to Section XI, regardless of the statements, conclusions or opinions of the Independent Monitoring Contractor.

## X.  STIPULATED PENALTIES

55.     Defendants shall be liable for stipulated penalties to the United States for violations as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable

27

requirements of this Decree and within the specified time schedules established by or approved under this Decree.

56.     Non-Compliance with Consent Decree.  The following stipulated penalties shall accrue per violation per Day for each violation of any requirement of this Consent Decree, except for the Reporting Requirements of Section IX:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 per Day or portion thereof | 1st through 14th Day |
| $2,500 per Day or portion thereof | 15th through 30th Day |
| $4,500 per Day or portion thereof | 31st Day and beyond |

57.     Non-Compliance with Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the Reporting Requirements under Section IX of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $250 per Day or portion thereof | 1st through 14th Day |
| $500 per Day or portion thereof | 15th through 30th Day |
| $1,250 per Day or portion thereof | 31st Day and beyond |

58.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

28

59.     Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

60.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

61.     Stipulated penalties shall continue to accrue as provided in Paragraph 58, during any Dispute Resolution under Section XII, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, to the United States within 60 Days of receiving the Court's decision or order, except as provided in subparagraph (c), below.

c.     If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, to the United States within 15 Days of receiving the final appellate court decision.

62.     <u>Obligations Prior to the Effective Date</u>.  Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of the terms of this Consent Decree that have

29

occurred from the date of lodging to the Effective Date of the Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

63.        Defendants shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 14 and with the confirmation notices and transmittal letter information required by Paragraph 14, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

64.        If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

65.        Subject to the provisions of Section XIV of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

66.     <u>Non-Compliance with NPDES Permit Limits.</u> The following

stipulated penalties shall accrue per violation for each exceedance of an effluent guideline limit

under 40 C.F.R. Part 434, as implemented by state NPDES permits, by one of Defendants'

Facilities from the Effective Date of this Consent Decree until Termination pursuant to Section

XX:

| Per Daily Maximum Violation | Per Monthly Violation | Period of Noncompliance |
|---|---|---|
| $1,000 | $2,000 | 1st Violation |
| $2,500 | $5,000 | 2nd Consecutive Violation |
| $5,000 | $10,000 | 3rd Consecutive and Subsequent Violation(s) |

67.     Defendants shall pay any stipulated penalties due as a result of

NPDES violations under Paragraph 66 at the end of each quarter (i.e., by April 30, July 30,

October 30, and January 30). Defendants shall make payments by FedWire Electronic Funds

Transfer following the procedure specified in Paragraph 14, and notice of such payment shall be

sent to EPA with Defendants' quarterly reports required by Paragraph 43.

## XI. FORCE MAJEURE

68.     "Force Majeure," for purposes of this Consent Decree, is defined

as any event arising from causes beyond the control of Defendants, of any entity controlled by

Defendants, or of Defendants' contractors, that delays or prevents the performance of any

obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.

The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using

best efforts to anticipate any potential Force Majeure event and best efforts to address the effects

31

of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

        69.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA, within 72 hours of when Defendants first knew that the event might cause a delay. Within 7 Days thereafter, Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

70. If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event shall be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA shall notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

71. If EPA does not agree that the delay or anticipated delay has been or shall be caused by a Force Majeure event, EPA shall notify Defendants in writing of its decision.

72. If Defendants elect to invoke the Dispute Resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or shall be caused by a Force Majeure event, that the duration of the delay or the extension sought was or shall be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 68 and 69. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

33

## XII. DISPUTE RESOLUTION

73.        Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Findings of the Independent Monitoring Contractor pursuant to Paragraphs 51 and 53 are not subject to Dispute Resolution. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

74.        Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. The Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

75.        Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or

34

opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

76.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 78.

77.     An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.

78.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to Paragraph 76. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

79.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

80.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 75 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 75, Defendants shall bear the burden of demonstrating that its position fulfills the terms, conditions, requirements, and objectives of this Consent Decree. The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in

36

Paragraph 61. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII. INFORMATION COLLECTION AND RETENTION

81.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry onto any property under the ownership or control of the Defendants, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendants' compliance with this Consent Decree.

82.     Upon request, Defendants shall provide EPA or its authorized representatives splits of any samples taken by Defendants. Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

83.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other

37

information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

84.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

38

85.　　　　Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

86.　　　　This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

### XIV.　EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

87.　　　　This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint in this action, filed on May 10, 2007, through the date of lodging.

88.　　　　The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 87.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 87.

89.　　　　In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the

39

Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim

based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim

preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by

the United States in the subsequent proceeding were or should have been brought in the instant

case, except with respect to claims that have been specifically resolved pursuant to Paragraph 87

of this Section.

       90.       This Consent Decree is not a permit, or a modification of any

permit, under any federal, state, or local laws or regulations.  Defendants are responsible for

achieving and maintaining complete compliance with all applicable federal, state, and local laws,

regulations, and permits; and Defendants' compliance with this Consent Decree shall be no

defense to any action commenced pursuant to any such laws, regulations, or permits, except as

set forth herein.  The United States does not, by its consent to the entry of this Consent Decree,

warrant or aver in any manner that Defendants' compliance with any aspect of this Consent

Decree shall result in compliance with provisions of the Act, 33 U.S.C. § 1311, *et seq.*, or with

any other provisions of federal, state, or local laws, regulations, or permits.  Application for

construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays

caused by inadequate Facility planning or plans and specifications on the part of Defendants shall

not be cause for extension of any required compliance date in this Consent Decree.

       91.       This Consent Decree does not limit or affect the rights of

Defendants or of the United States against any third parties, not party to this Consent Decree, nor

40

does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

92.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

93.     By the execution of this Consent Decree, Defendants release and shall hold harmless the United States, it instrumentalities, agents, and employees, in their official and personal capacities, of any and all liability or claims arising out of or otherwise related to the negotiations leading to this Consent Decree and all matters contained therein.

## XV.  COSTS

94.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XVI.  NOTICES

95.     Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-1-1-08470

41

<u>To EPA</u>:

Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building, 2241A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

NPDES Enforcement Branch Chief
U.S. EPA Region III
1650 Arch Street, 3WP42
Philadelphia, PA 19103

Chief, Water Programs Enforcement Branch
U.S. EPA Region IV
61 Forsyth Street, S.W.
Atlanta, GA 30303

<u>To Defendants</u>:

Thomas Cook
Director of Environmental Affairs
Massey Energy Company
315 70th Street
Charleston, WV 25304

96.      Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

97.      Notices submitted pursuant to this Section shall be deemed

submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual

agreement of the Parties in writing.

## XVII. EFFECTIVE DATE

98.         The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter this Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVIII. RETENTION OF JURISDICTION

99.         The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII and XIX, or effectuating or enforcing compliance with the terms of this Decree.

## XIX. MODIFICATION

100.         The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

101.         Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII of this Decree (Dispute Resolution); provided, however, that,

instead of the burden of proof provided by Paragraph 80, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

XX.   <u>TERMINATION</u>

102.      After Defendants have completed the requirements of Section VI (Compliance Requirements) of this Decree, have thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of five years, have complied with all other requirements of this Consent Decree, including those relating to the Injunctive Relief under Section VII and Additional Injunctive Relief required by Section VIII of this Consent Decree, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

103.      Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

104.      If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section XII of this Decree.

44

However, Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 75 of Section XII, until 30 Days after service of its Request for Termination.

### XXI.   PUBLIC PARTICIPATION

105.        This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

### XXII.   SIGNATORIES/SERVICE

106.        Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

107.        This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII.  INTEGRATION

108.        This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV.  FINAL JUDGMENT

109.        Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXV.  APPENDICES

110.        The following appendices are attached to and part of this Consent Decree:  (a) "Appendix A" is the Stream Restoration Plan for the Little Coal River; and (b) "Appendix B" is a map identifying the location of the conservation easements.

SO ORDERED THIS _9th_ DAY OF _April_ , 2008.


John T. Copenhaver, Jr.
United States District Judge

46

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Massey Energy Company, et al.*

FOR THE UNITED STATES OF AMERICA

Date: _12 January 2009_

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: _1/15/08_

JEFFREY D. TALBERT
Trial Attorney
NATHANIEL DOUGLAS
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

47

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Massey Energy Company, et al.*

FOR THE UNITED STATES OF AMERICA

CHARLES T. MILLER
United States Attorney

Date: _1/16/08_               *Carol Casto* /gr.
                              CAROL A. CASTO
                              Assistant United States Attorney
                              WV State Bar Number 890
                              P.O. Box 1713
                              Charleston, WV 25326

48

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Massey Energy Company, et al.*

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

Date: 1/10/08

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2201A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 1/4/08

ROBERT G. KLEPP
Attorney
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2243A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

49

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Massey Energy Company, et al.*

FOR MASSEY ENERGY COMPANY, A.T. MASSEY COAL COMPANY, MASSEY COAL SERVICES, INC., ALEX ENERGY, INC., ARACOMA COAL COMPANY, INC., BANDMILL COAL CORPORATION, BIG BEAR MINING COMPANY, CLEAR FORK COAL COMPANY, DELBARTON MINING COMPANY, DUCHESS COAL COMPANY, ELK RUN COAL COMPANY, INC., GREEN VALLEY COAL COMPANY, INDEPENDENCE COAL COMPANY, INC., JACKS BRANCH COAL COMPANY, LONG FORK COAL COMPANY, MAJESTIC MINING, INC., MARFORK COAL COMPANY, INC., MARTIN COUNTY COAL CORPORATION, NEW RIDGE MINING COMPANY, OMAR MINING COMPANY, PEERLESS EAGLE COAL CO., PERFORMANCE COAL COMPANY, POWER MOUNTAIN COAL COMPANY, RAWL SALES & PROCESSING, CO., ROAD FORK DEVELOPMENT COMPANY, INC., SIDNEY COAL COMPANY, INC., STIRRAT COAL COMPANY, TRACE CREEK COAL COMPANY

Date: _12/26/7_

M. SHANE HARVEY
Vice President & Assistant General Counsel
Massey Energy Company
315 70th Street
Charleston, WV 25304

50

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Massey Energy Company, et al.*

FOR MASSEY ENERGY COMPANY, A.T. MASSEY COAL COMPANY, MASSEY COAL SERVICES, INC., ALEX ENERGY, INC., ARACOMA COAL COMPANY, INC., BANDMILL COAL CORPORATION, BIG BEAR MINING COMPANY, CLEAR FORK COAL COMPANY, DELBARTON MINING COMPANY, DUCHESS COAL COMPANY, ELK RUN COAL COMPANY, INC., GREEN VALLEY COAL COMPANY, INDEPENDENCE COAL COMPANY, INC., JACKS BRANCH COAL COMPANY, LONG FORK COAL COMPANY, MAJESTIC MINING, INC., MARFORK COAL COMPANY, INC., MARTIN COUNTY COAL CORPORATION, NEW RIDGE MINING COMPANY, OMAR MINING COMPANY, PEERLESS EAGLE COAL CO., PERFORMANCE COAL COMPANY, POWER MOUNTAIN COAL COMPANY, RAWL SALES & PROCESSING, CO., ROAD FORK DEVELOPMENT COMPANY, INC., SIDNEY COAL COMPANY, INC., STIRRAT COAL COMPANY, TRACE CREEK COAL COMPANY

Date: 1/3/08

JOHN C. MARTIN
Patton Boggs LLP
2550 M Street, N.W.
Washington, D.C. 20037

51